UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **JOANN MARIE BROUSSARD** | * | **CIVIL ACTION NO. 14-0957** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Joann Marie Broussard, born April 6, 1958, filed applications for a period of disability, disability insurance benefits and supplement security income on July 27, 2011, alleging disability as of August 30, 2010,[1] due to a heart attack, high blood pressure, high cholesterol, vision problems, Sjörgen's syndrome and/or osteoarthritis.[2]

---

[1]Claimant's onset date was amended from December 27, 2008, to August 30, 2010.  (Tr. 11).

[2]Claimant's date last insured was December 31, 2012.  (Tr. 11, 133, 160).  Thus, she must establish a disabling condition before the expiration of her insured status.  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) Records from Lafayette Heart Hospital dated December 28-30, 2008**. Claimant presented with complaints of chest pain showing myocardial infarction. (Tr. 184-87). Angiography revealed a 95% mid-circumflex lesion which was stented with a residual of 20%. (Tr. 184). She also had a lesion immediately distal, which was stented leaving a 10 to 20% residual, and several 50% lesions in her right coronary and left anterior descending artery. She was held for two days, and discharged in stable condition.

**(2) Consultative Internal Medicine Examination by Dr. Daniel Dension dated March 21, 2009**. Claimant was evaluated for her myocardial infarction, high blood pressure and high cholesterol. (Tr. 196). She stated that she could dress and feed herself, stand for five minutes at a time for a total of four hours out of an eight-hour day, walk on level ground for 10 to 15 feet, sit for 30 minutes,

and lift five pounds.  She did not drive, but was able to sweep, mop, vacuum, cook, and do the dishes.  (Tr. 196-97).  She did not shop, climb stairs or mow grass.  (Tr. 197).

Claimant's medications included Norvasc, Simvastatin, Metoprolol, Aspirin, Nitrostat and Plavix.  Her height was 62 inches, and she weighed 157 pounds.  Blood pressure was 131/60.

On examination, claimant ambulated without difficulty.  (Tr. 198).  She was able to get on and off the examination table and up and out of the chair, and dress and undress, without problems.  Her visual activity was 20/20 on the right and 20/30 on the left without glasses.  Her heart was in regular rate and rhythm with no murmurs, rubs or gallops.

On spine and extremities exam, claimant had no paraspinal muscle tenderness.  Peripheral pulse was 2+ bilaterally.  She had no edema.  Gait was normal, grip strength was 5/5 in all extremities, and gross manipulation skills were normal.

Range of motion in all extremities was normal.  Straight leg testing was negative.  Claimant laid straight back on the examination table.  She was able to walk on her heels and toes, perform heel-to-toe ambulation, and squat.

Neurologically, claimant was alert and oriented x 3.  She followed simple and complex commands.  Motor function was 5/5 in all extremities.  She had no evidence of muscle atrophy.  Sensory, cerebellar and cranial nerves were intact.  Deep tendon reflexes were 2+ and symmetric.

Dr. Denison's impression was mycardial infarction, from which claimant had recovered uneventfully; continued chest pain responsive to nitroglycerine; high blood pressure, and hypercholesterolemia.  He found no clinical evidence to support any functional limitations.

**(3) Records from University Medical Center ("UMC") dated May 14, 2009 to August 15, 2011**.  On March 26, 2010, claimant complained of back and right hip pain.  (Tr. 240).  The assessment was arthritic pain.  (Tr. 242).  She was given a Toradol injection and prescribed Percocet for severe pain only.  (Tr. 243-44).

An x-ray of the right hand taken on July 30, 2010, was negative.  (Tr. 238).

On August 15, 2010, claimant complained of chronic joint pains, bilateral hand swelling with weakness, difficulty holding objects, and bilateral shoulder pain.  (Tr. 232-34).  The assessment was acute exacerbation of chronic polyarthralgia.  (Tr. 234).

On August 28, 2010, claimant complained of chest pain. (Tr. 220). The diagnosis was CP – exertional.

On February 15, 2011, claimant had swelling of joints in the left metacarpal on examination. (Tr. 229). The impression was Sjögren's syndrome, for which she was referred to rheumatology. (Tr. 230).

On July 2, 2011, claimant complained of pain all over her body. (Tr. 212). She had been diagnosed with Sjögren's syndrome earlier that year. She was prescribed Soma and Lortab. (Tr. 219).

On August 15, 2011, claimant complained of having increased joint pain all over. (Tr. 205). She had a history of Sjögren's syndrome, cardiac disease and hypertension. (Tr. 208). She was prescribed Toradol. (Tr. 210).

**(4) Consultative Examination by Dr. Barnabas Fote dated October 22, 2011**. Claimant complained of heart attack, hypertension, hypercholesterolemia, and Sjögren's syndrome. (Tr. 257). She reported having chest pain about three times a day, which was relieved by nitroglycerin; shortness of breath after walking about one mile, and occasional palpitations. She also stated that she had been diagnosed with Sjögren's syndrome in May, 2010. She alleged that her knees, shoulders, and back ached constantly; her eyes were constantly dry, for which she used eye drops daily, and she had difficulty swallowing.

Claimant's medications included Toprol-XL, Plavix, Crestor, TobraDex, Imdur, Diovan, Aspirin, Diclofenac, and Nitroglycerin.  She indicated that she was independent in eating, looking up and dialing numbers, answering the telephone, walking, and using public transportation.  (Tr. 258).  She was dependent for driving.

On examination, claimant was 4 feet 10 inches tall, and weighed 168 pounds.  (Tr. 259).  Her blood pressure was 176/97.  Her visual acuity was 20/25 OD, 20/25 OS.

Claimant was able to walk into the room and out, and get up on the exam table, without assistance or assistive device.  Gait and station were normal.  She had a normal affect, communicated well, understood instructions, and was cooperative during the exam.  She seemed to have normal recent and remote memory and normal cognition.

On cardiovascular exam, claimant had regular rate and rhythm, with no murmurs.  Pulses were normal at 2+/6 bilaterally.  Lungs were clear.

In the upper extremities, claimant's grip and strength were 5/5.  Deep tendon reflexes were 2+.  She could fully extend her hands, fully oppose her fingers, and make a fist.

In the lower extremities, claimant had normal deep tendon reflexes at 2+ and strength at 5+/5. She had no joint swelling, edema, or ankle tenderness.

Claimant had no lumbar muscle spasm or tenderness. Straight leg raising was negative. (Tr. 260). Neurologically, she was alert and oriented x 3. Light touch sensation was intact. She had difficulty doing tiptoe and heel walk and squat. Cranial nerves were grossly intact.

Dr. Fote's impression was coronary artery disease, hypertension, hypercholesterolemia, and a history of Sjögren's syndrome. He opined that based on the musculoskeletal exam, claimant should be able to sit, stand, pull and push as tolerated. She should also be able to kneel, crawl and crouch, and reach, grasp, handle and finger objects. She had no need for an assistive device.

**(5) Medical Evaluation/Case Analysis by Dr. Timothy Honigman dated November 2, 2011**. Dr. Honigman determined that claimant could lift 20 pounds occasionally and 10 pounds frequently; stand/walk or sit about six hours in an eight-hour workday, and had unlimited push/pull ability. (Tr. 59). She was limited to climbing ramps/stairs occasionally; never climbing ladders/ropes/scaffolds, and balancing, stooping, kneeling, crouching and crawling occasionally. (Tr. 60). She had no manipulative, visual, communicative or

environmental limitations. He determined that she had the capacity for light work. (Tr. 61, 264).

**(6) Records from UMC dated September 5, 2011 to November 8, 2012**.

On September 26, 2011, claimant was seen for a history of "Sicca syndrome." (Tr. 288). X-rays dated October 31, 2011, showed no acute bony abnormality. (Tr. 284).

In April and May, 2012, claimant reported irregular heart beat, chest pain and shortness of breath. (Tr. 345, 348). AN EKG dated May 27, 2012, showed normal sinus rhythm and normal electrical ORS Axis. (Tr. 342).

On May 27, 2012, claimant complained of generalized body aches. (Tr. 331). There was "[n]othing much on exam." (Tr. 334-35, 343). The impression was Sjögren's syndrome. (Tr. 335).

X-rays of the left ankle taken on September 14, 2012, showed joint effusion, soft tissue swelling, and abnormal lucency at the lateral malleolus concerning for cellulitis and osteomyelitis. (Tr. 307).

A NM cardiac stress test taken on September 26, 2012, showed normal myocardial perfusion SPECT and normal left ventricular ejection fraction. (Tr. 320). An echocardiogram taken on November 5, 2012, showed good left ventricular systolic function. (Tr. 314).

**(7) Claimant's Administrative Hearing Testimony**. At the hearing on November 1, 2012, claimant was 54 years old. (Tr. 25). She testified that she was 4 feet 9 inches tall, and weighed about 182 pounds. She said that her weight fluctuated by about 15 pounds. (Tr. 26).

Claimant had graduated from high school. (Tr. 27). She had past work experience at a halfway house doing security and paperwork and preparing lunch. She had also worked as a janitor, seamstress, substitute teacher and cashier. (Tr. 27, 144).

Regarding complaints, claimant testified that she had stopped working after having a heart attack, then developing Sjögren's syndrome and fibromyalgia. (Tr. 29). She reported that her Sjögren's syndrome caused body aches, dry eyes, swallowing problems, blurred vision, and peeling skin. (Tr. 29, 45-46). She also had joint pain in her shoulders, neck, back and knees. (Tr. 47).

Claimant said that she took medication for the Sjögren's syndrome and fibromyalgia, but only steroids helped. (Tr. 29, 42-43). She wore wrist braces for carpal tunnel syndrome and a brace for her ankle. (Tr. 29, 34). She also reported daily chest pains since her heart attack, which were relieved by nitroglycerine. (Tr. 32). She also took Plaquenil, Amitriptyline, Plavix and Crestor. (Tr. 43-44).

As to restrictions, claimant reported that she could not tie shoe laces due to carpal tunnel syndrome. (Tr. 30). She stated that she could not walk for long because of a sprained ankle. (Tr. 33-34, 45). Additionally, she reported problems with picking up her arm to do her hair and getting in and out of the bathtub. (Tr. 48)

Regarding activities, claimant testified that she read her Bible almost all day. (Tr. 35). She also watched television. She attended church every day. (Tr. 36). She was able to take care of her personal hygiene.

Claimant testified that her children and step-grandchildren visited during the day. (Tr. 38). She testified that she had stopped cooking, washing dishes and doing laundry because she dropped things. (Tr. 39). She also reported that she had stopped driving after her heart attack. (Tr. 26-27).

**(8) The ALJ's Findings**. Claimant argues that the ALJ: (1) erred in failing to find that Sjögren's syndrome and/or osteoarthritis were severe impairments at step two of the sequential evaluation process and failed to consider functional limitations caused by these impairments in formulating his RFC assessment, and (2) violated 20 C.F.R. § 404.1527(f) and 416.927(f) as well as Social Security Ruling 96-6p by ignoring the State agency medical consultant's opinions regarding claimant's postural limitations that were based in part of her diagnosis of Sjögren's

syndrome. Because I find that the ALJ erred in failing to find that claimant's Sjögren's syndrome was a severe impairment, I recommend that this matter be **REVERSED**, and that claimant be awarded benefits.

First, claimant argues that the ALJ erred in failing to find Sjögren's syndrome and/or osteoarthritis was a severe impairment, citing *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), and *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Sjögren's syndrome is defined in the Social Security listings as follows:

a. *General*.
(i) Sjögren's syndrome is an immune-mediated disorder of the exocrine glands. Involvement of the lacrimal and salivary glands is the hallmark feature, resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough.

(ii) Many other organ systems may be involved, including musculoskeletal (arthritis, myositis), respiratory (interstitial fibrosis), gastrointestinal (dysmotility, dysphagia, involuntary weight loss), genitourinary (interstitial cystitis, renal tubular acidosis), skin (purpura, vasculitis), neurologic (central nervous system disorders, cranial and peripheral neuropathies), mental (cognitive dysfunction, poor memory), and neoplastic (lymphoma). Severe fatigue and malaise are frequently reported. Sjögren's syndrome may be associated with other autoimmune disorders (for example, rheumatoid arthritis or SLE); usually the clinical features of the associated disorder predominate.

11

b. Documentation of Sjögren's syndrome. If you have Sjögren's syndrome, the medical evidence will generally, but not always, show that your disease satisfies the criteria in the current "Criteria for the Classification of Sjögren's Syndrome" by the American College of Rheumatology found in the most recent edition of the *Primer on the Rheumatic Diseases* published by the Arthritis Foundation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00 D7.

The listing for Sjögren's syndrome requires the following:

14.10 *Sjögren's syndrome*. As described in 14.00D7. With:

A. Involvement of two or more organs/body systems, with:

1. One of the organs/body systems involved to at least a moderate level of severity; and

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

or

B. Repeated manifestations of Sjögren's syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

1. Limitation of activities of daily living.

2. Limitation in maintaining social functioning.

3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.10.

In his decision, the ALJ determined that while claimant had severe impairments of coronary artery disease, peripheral artery disease, obesity, and hypertension, which caused more than minimal functional limitations, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 13-14). In particular, he did not include Sjögren's syndrome or osteoarthritis as a severe impairment.

Claimant argues that the ALJ erred in failing to find that Sjögren's syndrome was a severe impairment, citing *Loza* and *Singletary*. [rec. doc. 10, p. 8]. She argues that this error was compounded by the ALJ's failure to then consider limitations caused by Sjögren's syndrome in assessing her RFC, noting that the ALJ erroneously stated that "the medical evidence fails to document *any* clinical findings in support of Sjögren's syndrome." [rec. doc. 10, p. 9; Tr. 16].

In *Loza*, the Fifth Circuit reiterated the *Stone* standard as follows:"an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." (emphasis added). *Id*. at 391 (*citing Stone*, 752 F.2d at1101). In censuring misuse of the severity regulation, the court in *Stone* forewarned that the Fifth Circuit would "in the future assume that the ALJ and the Appeals Council

13

have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) is used." (emphasis added). *Loza*, 219 F.3d at 391 (*quoting Stone*, 752 F.2d at 1106).

Here, the ALJ addressed the standard in *Stone*, and rejected claimant's argument that her autoimmune disorder met Listing 14.10 for Sjögren's syndrome. (Tr. 12, 16). Specifically, he found that while the objective evidence showed that claimant had a *history* of Sjögren's syndrome, the medical evidence failed to document any *clinical findings* in support of Sjögren's syndrome. (emphasis added). (Tr. 16).

However, the record reflects that claimant was diagnosed with Sjögren's syndrome on several occasions. (Tr. 205, 208, 212, 215, 225, 230, 257, 286-87, 318, 330, 335). Contrary to the ALJ's opinion, claimant *did* have clinical findings of Sjögren's syndrome, including dry eyes, difficulty in swallowing, sicca, joint problems and arthritis. (Tr. 208, 229, 242, 257, 286, 288, 318). Additionally, her treating physicians prescribed Plaquenil, a medication used to treat Sjögren's syndrome and other autoimmune disorders. (Tr. 286-87).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded

great weight in determining disability.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  *Newton,* 209 F.3d at 455 (*citing* 20 C.F.R. § 404.1527(d)(2)).

Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence.  *Id*.; *Greenspan*, 38 F.3d at 237.

Here, the record reflects that claimant's treating physicians at UMC found clinical signs of Sjögren's syndrome.  These findings are consistent throughout the record.  Accordingly, the undersigned finds that the ALJ erred in failing to find that claimant's Sjögren's syndrome was a severe impairment.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **REVERSED**, and that claimant be awarded benefits as of her onset date of August 30, 2010, through her date last insured of December 31, 2012.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed June 23, 2015, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE